T.C. Memo. 1997-399


UNITED STATES TAX COURT


POPE & TALBOT, INC., & SUBSIDIARIES, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent[*]


Docket No. 530-93.                    Filed September 2, 1997.


Grady M. Bolding, James E. Burns, Jr., Russell D. Uzes,
Kevin P. Muck, and D. Cameron Baker, for petitioner.

Milton J. Carter, Jr., Terri Merriam, Henry T. Schaefer,
Christopher D. Hatfield, Randall E. Heath, and Robert F.
Geraghty, for respondent.


SUPPLEMENTAL MEMORANDUM OPINION

RUWE, Judge:  The present dispute arises from the parties'

---

[*]This opinion supplements our opinion in Pope & Talbot,
Inc., & Subs. v. Commissioner, T.C. Memo. 1997-116.

differing computations under Rule 155.[1]

In our first opinion in this case, <u>Pope & Talbot, Inc., &</u> <u>Subs. v. Commissioner</u>, 104 T.C. 574 (1995) (Pope & Talbot I), on motions for partial summary judgment, we held that under section 311(d), petitioner's gain on the distribution of appreciated property is to be determined as if petitioner sold its interest in the appreciated property at fair market value on the date of distribution. In our subsequent opinion, <u>Pope & Talbot, Inc., &</u> <u>Subs. v. Commissioner</u>, T.C. Memo. 1997-116 (Pope & Talbot II), we determined the fair market value of the appreciated property on the date of distribution. In addition, we held that petitioner may offset distribution expenses against its section 311(d) gain.

In Pope & Talbot II, we made findings of fact which are summarized as follows. During 1985, petitioner's operations included timber, land development, and resort businesses in the State of Washington. On December 4, 1985, petitioner's shareholders approved a plan to transfer the assets from its Washington businesses to a newly formed limited partnership, which was to be owned by petitioner's shareholders (the Partnership). Pursuant to this plan, petitioner transferred to the Partnership approximately 78,000 acres of Washington timberlands and its Washington land development and resort businesses, which included an additional 4,400 acres. These

---

[1]All Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code in effect for the years in issue.

timberlands and the land development and resort businesses are collectively referred to as the "Washington properties". In Pope & Talbot II, we held that the fair market value of the Washington properties was $48.5 million on the date of distribution.

In addition to the Washington properties, petitioner transferred $1.5 million in cash to the Partnership for working capital and sold certain installment notes receivable to the Partnership for approximately $4.9 million in cash. The Partnership issued partnership units to each owner of petitioner's common stock on a pro rata basis. Petitioner incurred $1,364,071 in legal, accounting, investment banking, and other fees relating to the formation of the Partnership, the transfer of the Washington properties, and the distribution of the partnership units. In Pope & Talbot II, we held that petitioner can offset these fees against the section 311(d) gain it realized on the distribution of the Washington properties. We directed that decision be entered pursuant to Rule 155.

Both parties have submitted Rule 155 computations. The parties are in agreement regarding the computation for petitioner's 1986 taxable year. The parties are also in agreement regarding the computation for petitioner's 1985 taxable year, except for the following two items: (1) Petitioner maintains that the $1.5 million of working capital is included in the fair market value of $48.5 million for the Washington

properties; respondent disagrees;[2] and (2) respondent maintains that a portion of the $1,364,071 in expenses should be allocated to the transfer of $1.5 million in working capital and to the sale of the installment notes receivable; petitioner disagrees.

Inclusion of Working Capital

In Pope & Talbot II, the primary issue for decision was the fair market value of the Washington properties distributed by petitioner.  Our valuation was limited to the fair market value of timber, timberland, land development and resort properties, and related assets on the Washington properties.  Neither the value of the $1.5 million in cash transferred to the Partnership nor the value of the installment notes receivable sold to the Partnership was in dispute in Pope & Talbot II.

In determining the fair market value of the Washington properties, we grouped the properties into four separate categories and described the assets in each category.  These descriptions include, for example, the amount of merchantable timber that could be harvested, the amount of land that could be developed, and the various improvements on the properties.  We examined the assets in each category and, with the assistance of expert valuation reports, determined the fair market value of assets in each category.  We concluded that the value of each

_____

[2]Petitioner's Rule 155 computation treats the working capital as part of the Washington properties, in effect, reducing the fair market value of the Washington properties by $1.5 million.

category of assets making up the Washington properties was as follows:

| | |
|---|---|
| Timber & timberland | $31.0 million |
| Development property | 10.5 million |
| Port Ludlow community | 4.5 million |
| Port Gamble townsite and tree nurseries | 2.5 million |
| | $48.5 million |

The $1.5 million in cash transferred to the Partnership was not included in the assets that we valued. Furthermore, we did not consider, nor did we intend to include, any portion of the working capital in determining the fair market value of the Washington properties. Respondent's Rule 155 computation correctly treats the $1.5 million of working capital as being separate from the Washington properties that we valued in Pope & Talbot II.

Allocation of Expenses

In Pope & Talbot II, we found that petitioner incurred $1,364,071 in expenses relating to the formation of the Partnership, the transfer of the Washington properties, and the distribution of the partnership units. The overall purpose of these activities was to distribute the Washington properties. We held that petitioner may offset its expenses incurred in connection with the distribution against its section 311(d) gain. We did not find that these expenses related to either the transfer of the cash or the separate sale of the installment

notes receivable. The $1,364,071 in expenses includes payments for: (1) General accounting advice and SEC financial reporting with regard to the distribution; (2) tax and securities advice and general counsel work relating to the distribution; (3) a fairness opinion; (4) fees relating to the mortgage on the timberlands; (5) fees relating to the listing of the partnership units; (6) transfer agent fees; (7) legal services in connection with the distribution; (8) real estate advice; (9) printing the proxy statement issued in connection with the distribution; and (10) various other costs such as employee reimbursement for distribution-related travel and lodging. The expenses in question were not incurred for the transfer of cash to the Partnership or the separate sale of the installment notes receivable.

Respondent's Rule 155 computation, however, allocates a portion of the $1,364,071 in expenses to all assets conveyed to the Partnership, including the working capital and the installment notes receivable sold to the Partnership, based upon their relative values. Of the total distribution expenses, respondent's computation allocates $124,726 to the installment notes receivable and $37,180 to the working capital. Because petitioner realized no section 311(d) gain on the distribution of these two assets, the distribution expenses allocated to these assets under respondent's computation fail to offset petitioner's section 311(d) gain. Respondent's Rule 155 computation, which allocates $161,906 of the expenses to the working capital and the

installment notes receivable, is incorrect.  The entire $1,364,071 in expenses should be allocated to the Washington properties.

Based upon the foregoing, the parties will be directed to submit a revised agreed computation and proposed decision under Rule 155.

<u>An appropriate order will be issued</u>.